IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BRIAN KEITH MANLEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:21CV922 |
| | ) |
| JOHN GODFREY, | ) |
| | ) |
| Respondent. | ) |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Brian Keith Manley, a prisoner of the State of North Carolina, filed a Petition [Doc. #1] and an Amendment [Doc. #6] to his Petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 6, 2018, in the Superior Court of Forsyth County, North Carolina, Petitioner was convicted by a jury of attempted first-degree murder, assault with a deadly weapon with intent to kill, and possession of a firearm by a felon. (Petition, §§ 2, 5.) He then received consecutive sentences of 300 to 372 months, 144 to 185 months, and 25 to 39 months. (Id. § 3.) Petitioner filed a direct appeal, but the North Carolina Court of Appeals affirmed his conviction and he did not seek discretionary review from the North Carolina Supreme Court. State v. Manley, No. COA19-921, 2020 WL 4459334 (N.C. Ct. App. Aug. 4, 2020) (unpublished).[1] Petitioner thereafter filed a Motion for Appropriate Relief in the trial court. (Respondent's Brief, [Doc. #16] Ex. 8.) After that court denied the Motion,

---

[1] The Court of Appeals affirmed Petitioner's conviction and sentence, but remanded for correction of issues related to restitution and attorney's fees, and those matters are not at issue in the present case.

Petitioner filed an Amendment to the Motion, which was also denied. (Id. Exs. 9-11.) Petitioner also sought to refile the Motion, but that request was denied. (Id. Exs. 12, 13.) He next unsuccessfully sought a writ of certiorari from the North Carolina Court of Appeals. (Id. Ex. 15.) Petitioner then filed the current action in this Court. Respondent opposes the Petition with a Motion to Dismiss [Doc. #15], Petitioner filed a Response [Doc. #18], and Respondent's Motion is now before the Court. Additionally, Petitioner filed a Motion [Doc. #13] seeking to amend his Petition, which the Court will grant, but the Court reserves determination of whether any evidence proffered by Petitioner may properly be considered.

## Basic Facts

According to Travis Deckmar's testimony at Petitioner's trial, on June 28, 2017, he and Petitioner had been friends for a year or two. (Trial Tr., Vol. II [Doc. #16, Ex. 17] at 28.) They had also been charged with breaking into a sports collectibles store together. (Id.) Matthew Frazier and another person came to Deckmar's home to buy Vicodin pills. (Id. at 30-31.) Frazier did not have money for the purchase, but asked Deckmar to ride with him to get it. (Id. at 31-32.) Frazier then drove Deckmar to the end of a cul-de-sac and waited until Petitioner and April Holston arrived. (Id. at 32-33.) Petitioner pointed a handgun at Deckmar and got into the back seat with him. (Id. at 34.) The entire group drove to Scott Neas's house where Neas met them wearing a full-face mask. (Id. at 39-40.) However, Petitioner called Neas "Scott" and Deckmar recognized Neas's voice from a prior meeting at his house. (Id. at 40.) Petitioner next forced Deckmar to make a video on Deckmar's phone confessing to being solely responsible for a breaking and entering that he and Petitioner were charged with committing. (Id. at 40-43.) Neas and Petitioner then walked Deckmar into a barn located in

2

the woods. (Id. at 55-56.) Petitioner called out the victim's name, told him to look at him, stated "[y]ou know I gotta do this," and shot Deckmar in the head. (Id. at 58.)

Deckmar fell to the floor, but he did not die. He heard Petitioner and Neas leave the barn before trying, but failing, to get up. (Id. at 59.) After twenty or thirty minutes, he was able to get up, leave the barn, and make his way to a house to get help. (Id. at 60-63.)

Petitioner took the stand during his trial and denied shooting Travis Deckmar or even seeing him on the evening in question. (Trial Tr., Vol. III [Doc. #16, Ex. 18] at 68.)

## Petitioner's Claims

Petitioner raises four potential claims for relief in his supporting Memorandum [Doc. #1-1]. He alleges first that his right to an impartial jury was violated because one of the jurors was friends with Deckmar and did not disclose this during voir dire. (Memorandum at 5-6.) Second, Petitioner contends that the state withheld exculpatory evidence from the defense, providing it only after trial. (Id. at 8-14.) Third, Petitioner contends that the prosecution and investigating detectives falsified or misrepresented evidence in order to arrest and indict Petitioner. (Id. at 14-20.) Finally, Petitioner's fourth claim alleges that trial counsel provided ineffective assistance of counsel because he failed to contact and secure the testimony of alibi witnesses for Petitioner, failed to present expert testimony regarding the crime scene, and failed to communicate a plea offer to Petitioner. (Id. at 21-32.) Petitioner filed an Amendment to the Petition asserting an actual innocence argument, and review of Petitioner's arguments (Motion to Amend [Doc. #6]; Response [Doc. #18]) indicates that he intends to raise this actual innocence argument to excuse any procedural default, not as an independent claim for relief. Burr v. Jackson, 1:01CV393, 2020 WL 1472359, *12 (M.D.N.C. Mar. 26, 2020)

(unpublished), aff'd, 19 F.4th 395 (4th Cir. 2021), cert. denied, ___ U.S. ___, 143 S. Ct. 151 (2022) (holding that claims of actual innocence are not cognizable on habeas review as independent claims for relief).

Discussion

Respondent argues in its brief that Petitioner's claims are procedurally defaulted, either because (1) he did not exhaust them in the state courts and if he now returned to the state courts to exhaust them, they would be subject to a mandatory procedural bar under N.C. Gen. Stat. § 15A-1419(a)(1) and (b); or (2) because the state court applied a procedural bar to them in deciding the Motion for Appropriate Relief. In reviewing this contention, the Court notes that some of Petitioner's claims appear to be procedurally defaulted, but others may not be, and therefore it would be helpful to direct the State to respond to the substance of the claims before finally resolving the Petition.

In his first claim for relief, Petitioner contends that one of the jurors was friends with Deckmar and did not disclose it. In the Motion to Dismiss, Respondent argues that Petitioner failed to raise this claim in the state courts, leaving it unexhausted and procedurally defaulted. As to this claim, it appears that Petitioner failed to raise this claim at any point in the state courts. This Court cannot grant relief unless a petitioner "has exhausted the remedies available in the courts of the State" as to any claims he seeks to bring in federal court. 28 U.S.C. § 2254(b). Pursuant to this statutory requirement, "a federal habeas petitioner [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim. It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was

4

made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (internal citations omitted). The claim must be "fairly presented" to the state court, which means that it must "'be presented face-up and squarely . . . . Oblique references which hint that a theory may be lurking in the woodwork will not suffice.'" Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000) (quoting Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir.1997)); see also Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (finding that petitioner must place "both the operative facts and the controlling legal principles" before the state courts).

To the extent that Petitioner failed to exhaust this claim, it would also be procedurally defaulted because, where a petitioner fails to exhaust a claim but would find his unexhausted claim subject to a mandatory state procedural bar if he returned to state court for exhaustion, a federal procedural default also occurs. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) ("A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)); see also O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999). As to this first claim, it appears that if Petitioner returned to the state courts to exhaust this claim, it would be subject to a mandatory procedural bar under N.C. Gen. Stat. § 15A-1419(a)(1) and (b). Phillips v. Lewis, 683 F. App'x 207, 209 (4th Cir. 2017). As a result, the claim would be procedurally defaulted in this case.

To overcome that procedural default, Petitioner must demonstrate either (1) cause for the default and actual prejudice from a violation of federal law, or (2) that this Court's refusal to address his claim will result in a miscarriage of justice. See Longworth, 377 F.3d at 447-48.

5

If not, then the Court cannot consider the defaulted claims. As to this claim, it is not clear if Petitioner is attempting to assert cause and prejudice for failing to raise the claim earlier. In his Petition, with regard to the procedures he used to exhaust his state law remedies, Petitioner asserts, "I've actively pursued with due diligence to obtain evidence." (Petitioner [Doc. #1] at 16.) However, the evidence he seeks to rely on is a purported letter sent to Petitioner from a private investigator on December 6, 2018. It is not clear how or why he could not have presented this earlier to the state court in his 2019 appeal or 2020 Motion for Appropriate Relief. Petitioner also seeks to raise a miscarriage of justice argument based on what he claims is evidence of actual innocence. The United States Supreme Court has held that a claim of actual innocence can act as a "gateway" to allow an otherwise procedurally defaulted or time-barred claim to be heard. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. We have recognized, however, that a prisoner 'otherwise subject to defenses of abusive or successive use of the writ [of habeas corpus] may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence.' In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." (internal citations omitted)). To demonstrate actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new evidence. Schlup v. Delo, 513 U.S. 298, 327 (1995); see McQuiggin, 596 U.S. at 398-99. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

Petitioner attempts to meet this standard by proffering an Affidavit [Doc. #6-1] from Christopher Puckett, who states that he is Neas's cousin. He explains at length that he was present at Neas's residence on the night Deckmar was shot, that Petitioner was not present, that Neas forced Deckmar to make a video on his phone, and that Neas was the actual shooter in the case. However, Puckett's statement is contradicted by the fact that Deckmar, the actual victim in the case and a friend of Petitioner's who knew him well, testified at length that Petitioner was present, that Petitioner was the person who forced Deckmar to make the video on his phone, and that Petitioner was the shooter. Given that testimony, it does not appear that Petitioner could show that it is more likely than not that no reasonable juror would convict Petitioner. Therefore, it is unlikely that Petitioner can overcome the procedural default as to this first claim. However, because Petitioner's other claims require further consideration, and because it appears that further briefing would be helpful to clarify Petitioner's contentions, the Court need not finally resolve this issue at this time.

As to Petitioner's second and third claims, these claims were not raised by Petitioner on his direct appeal, but were raised in some form in his Motion for Appropriate Relief. Petitioner's second claim is that the State failed to disclose certain exculpatory evidence to him prior to trial. He contends that he ultimately received the evidence as part of a packet from the Forensic Services Division of the Winston-Salem Police Department after being sent to prison, and that the evidence was material and exculpatory and should have been provided to him prior to trial. Petitioner's third claim is that investigating authorities and the prosecution

7

engaged in various types of "misconduct" regarding his case by failing to run ballistic tests on the firearm. Petitioner did not mention anything resembling these claims on direct appeal, but did raise at least some form of these claims in his Motion for Appropriate Relief. (Motion for Appropriate Relief [Doc. #16, Ex. 8] at 3-15.) In denying the Motion for Appropriate Relief, the trial court stated that "upon his previous direct appeal to the North Carolina Court of Appeals, the Defendant was in a position to adequately raise any error of law and perhaps other grounds underlying the present motion." (Order Denying Motion, [Doc. #16, Ex. 9] at 2.) With respect to the contentions that Petitioner could have adequately raised on direct appeal, the trial court found that, "Defendant Manley's present motion is subject to denial for grounds pursuant to North Carolina General Statute § 15A-1419(a)." (Id.) Notably, "[f]ederal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000). The Fourth Circuit "ha[s] consistently held that § 15A-1419(a)(3) is an independent and adequate state ground for purposes of procedural default." Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008).

  However, in this case the trial court did not further delineate which issues in the Motion for Appropriate Relief were errors of law or which were the "other grounds" that could have "perhaps" been raised on direct appeal so as to be procedurally barred. The trial court also further found that Petitioner "failed to provide evidence or affidavits for his entitlement to relief." (Id. at 2-3.) In Petitioner's subsequent Amendment and Motion to Re-file, Petitioner

8

argued that the new evidence was not available to him on direct appeal. The trial court denied those Motions and again found that Petitioner "failed to provide evidence or affidavits for this entitlement to relief," and also found that the claims were "without legal merit; it raises no factual issues." (Orders [Doc. #16, Exs. 11, 13].) Thus, there is some ambiguity as to whether the trial court applied a procedural bar to Petitioner's discovery and misconduct claims because he failed to raise them on direct appeal, or whether those claims were denied because they were unsupported by evidence or affidavits, or were denied because they were without legal merit and raised no factual issues. Given this potential ambiguity, the Court concludes that it would be helpful to obtain a full response from the State on Petitioner's claims before resolving the issue of procedural default.[2]

Finally, Petitioner's fourth claim for relief asserts that he received ineffective assistance of counsel because counsel failed to contact or call five alibi witnesses who would have placed Petitioner at a location other than Neas's home at about the time of the attempted killing, that counsel did not investigate or consult with an expert regarding whether the lack of blood spatter evidence at the crime scene was inconsistent with the State's theory of the case, and that counsel did not communicate a favorable plea offer to Petitioner. As to the first two claims, these claims were at least arguably included in the various assertions of ineffective

---

[2] Notably, Petitioner contends that the evidence in question shows that the State tested areas of his car for gunshot residue, that the tests revealed such residue, that there is evidence that Neas drove the car after the time of Deckmar's shooting, and that there is not evidence that Petitioner drove the car during that time period. From this he concludes that the gunshot residue serves as evidence inculpating Neas in the shooting and exculpating Petitioner. However, the Exhibits [Doc. #1, Documents in Support at 9-10] Petitioner relies on appear to indicate only that gunshot residue evidence was collected from certain areas of Petitioner's vehicle. It is not clear that they indicate what the results of those tests were or if any results were ever obtained. The mere collection of evidence does not serve as exculpatory evidence. This issue can be addressed further after the State files its substantive response.

9

assistance of counsel set out in Petitioner's Motion for Appropriate Relief. Petitioner did raise an ineffective assistance of counsel claim in the state courts in his Motion for Appropriate Relief, and that ineffective assistance claim included assertions that counsel "failed to contact, depose, and/or present all alibi witnesses at trial" (Response Ex. 8 [Doc. #16-9] at 18.) The ineffective assistance claim also included assertions that counsel "failed to independently investigate, accrue, and test evidence purposely overlooked and/or ignored" by law enforcement, and did not undertake "independent research/testing/investigations of exculpatory information/evidence," with a further reference to counsel failing to request a continuance "when he knew the several issues needed to be addressed prior to trial, i.e., Defendant's Acura being tested for GSR/DNA and other evidence; the weapon remaining untested, the clothes that were found – untested; blood spatter in the tobacco barn – untested, etc., etc., etc." (Id. at 18, 19, 20.) These claims were not further set out or explained, so there is some question as to whether Petitioner fairly presented the substance of the claims. The trial court on the MAR addressed Petitioner's claims of ineffective assistance of counsel and found that Petitioner had made "no showing that counsel was deficient, or that his counsel's performance fell below [an] objective standard of reasonableness . . . [or] that any deficient performance prejudiced [him]," and therefore Petitioner had failed to state a cognizable claim for ineffective assistance. (Response Ex. 9 [Doc. #16-10] at 2-3.) Given the resolution of those claims by the trial court, it would be appropriate to consider the State's full response as to those claims.

The Court notes that in the current Petition, Petitioner also raises an ineffective assistance of counsel claim alleging that counsel failed to convey a plea offer to him. Petitioner
10

did not raise this claim at all to the state court, meaning that it is potentially unexhausted, would be procedurally barred if now raised in state court, and therefore subject to procedural default. There may be issues regarding whether Petitioner can attempt to overcome that procedural default on this claim of ineffective assistance of trial counsel, if the claim is substantial and could not have been raised on direct appeal. See Martinez v. Ryan, 566 U.S. 1 (2012); Davila v. Davis, 137 S. Ct. 2058 (2017). However, even if the procedural default could be excused, Petitioner would be required to show that he would have taken the plea offer; here, Petitioner argues only that he would have "considered and possibly accepted the offer." (Petition [Doc. #1] at 31.) The Court can address this further after the State files its full response.

IT IS THEREFORE ORDERED that Petitioner's Motion [Doc. #13] seeking to amend his Petition is granted, but the Court will reserve determination as to what evidence may properly be considered.

IT IS FURTHER ORDERED that the State is directed to file a full answer and response to Petitioner's claims within 40 days of the date of this Order, which will assist the Court in addressing the Petition in light of the issues noted above.

IT IS RECOMMENDED that Respondent's Motion to Dismiss [Doc. #15] be denied without prejudice to further consideration of the issues raised there after the State responds in full to the Petition.

This, the 16th day of February, 2023.

/s/ Joi Elizabeth Peake
United States Magistrate Judge
